UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LATANYA WILLIAMS,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　**Defendant.** | Civ. No. 20-12254 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Latayna Williams brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Williams was not disabled from February 15, 2017, the date of William's application for SSI, through September 12, 2019, the date of decision.

The issue presented is whether the ALJ's decision is supported by substantial evidence. For the reasons stated below, the decision is **AFFIRMED**.

**I.   BACKGROUND**[1]

Williams applied for SSI pursuant to section 1614(a)(3)(A) of the Social Security Act on February 15, 2017, alleging disability beginning as of June 16, 2015. (R. 15.) Her application was denied initially and on Reconsideration. (R. 15, 118–122, 124–126.) She requested a hearing before an ALJ to review her

---

[1]　Citations to the record are abbreviated as follows:

DE = docket entry

R. _ = Administrative Record (DE 9) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 9 attachments)

Pl. Br. = Williams's Moving Brief (DE 12)

application de novo. (R. 127–129.) A hearing was held on June 25, 2019, before ALJ Douglass Alvarado, who issued a decision on September 12, 2019. ALJ Alvarado denied disability at step five of the sequential evaluation, ruling that Williams is capable of performing sedentary work that accommodates her limitations and exists in significant numbers in the national economy. (R. 24–25.)[2]

Williams requested Appeals Council Review of ALJ Alvarado's decision, but her request was denied on June 15, 2020. This denial rendered ALJ Alvarado's decision the final decision of the Commissioner. (R. 1–6.) Williams now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.  In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires at step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the

---

[2]   The ALJ also found that Williams had no "past relevant work" experience. (R. 24.)

burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**B. The ALJ's Decision**

ALJ Alvarado undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ Alvarado concluded that Williams had not engaged in substantial gainful activity since February 15, 2017, the date of her application for SSI. (R. 17.)

### Step 2

The ALJ found that Williams had the following severe impairments: degenerative disc disease, degenerative joint disease of bilateral knees and right ankle, asthma, obstructive sleep apnea, obesity, depression, and posttraumatic stress disorder ("PTSD"). (R. 17.) Because the ALJ found that Williams suffered from several severe impairments, he proceeded to step three.

**Step 3**

With respect to her severe impairments, the ALJ determined that Williams did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) The ALJ paid particular attention to Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), 3.03 (Asthma), 12.04 (Depressive, Bipolar, and Related Disorders), and 12.15 (Trauma and Stressor-Related Disorders). The ALJ also considered whether obesity, in combination with Williams's other impairments, met or equaled any of the listed impairments.

First, ALJ Alvarado declined to find that Williams met the criteria for Listing 1.02 (Major Dysfunction of a Joint), because the record did "not document gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." (R. 18.) The record also failed to "document involvement of one major peripheral weight-bearing joint (ie., hip, knee, or ankle), resulting in inability to ambulate effectively; nor involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." (R. 18.)

Second, ALJ Alvarado found that Williams did not meet the requirements of Listing 1.04 (Disorders of the Spine), because the record did "not document nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, nor lumbar spinal stenosis resulting in pseudoclaudication." (R. 18.)

Third, ALJ Alvarado found that Williams did not meet the requirements for Listing 3.03 (Asthma), because the record did "not document exacerbations or complications from asthma requiring 3 hospitalizations within a 12-month period and at least 30 days apart." (R. 18.)

Fourth, ALJ Alvarado noted that although there is no listing for obesity, pursuant to Social Security Ruling 19-2p, "an obesity impairment, alone or in combination with another impairment may medically equal a listing." (R. 18.) The ALJ found that even when obesity was considered in combination with Williams's other impairments, she did not "meet or equal any of the listings[.]" (R. 18.)

Fifth, the ALJ determined that Williams's mental impairments, both individually and in combination, did not meet the criteria of Listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.15 (Trauma and Stressor-Related Disorders). (R. 18.) Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (R. 18.)[3] The ALJ found that the

---

[3]     A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation … means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

5

record demonstrates that Williams had only moderate limitation in the areas of "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." (R. 18–19.)

The ALJ also found that the evidence failed "to establish the presence of the 'paragraph C' criteria because medical treatment diminishes the signs of claimant's medical disorders, and the claimant has more than minimal capacity to adapt to changes in her environment." (R. 19.) Moreover, the ALJ determined that the record did not show: (1) "such marginal adjustment that the claimant has minimal capacity to adapt to changes in the environment or some new demands" and that (2) "simple changes or increased demands have led to a deterioration of the claimant's functioning or inability to function outside the home." (R. 19.)

Finally, the ALJ considered Williams's degree of mental limitation when determining her RFC.

---

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.15 (Trauma and Stressor-Related Disorders), a claimant must medically document: (1) exposure to actual or threatened death, serious injury or violence; (2) subsequent involuntary re-reexperiencing of the of the traumatic event; (3) avoidance of external reminders of the event; (4) disturbance in mood and behavior; and (5) increases in arousal and reactivity. Additionally, the claimant must also demonstrate that his affective disorder results in *either* the same "Paragraph B" or "Paragraph C" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

### RFC and Step 4

Next, ALJ Alvarado defined Williams's RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she is able to stand and stretch at the workstation after 30 minutes of sitting; is able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking; and must be able to use a handheld assistive device when standing or walking. She can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can never be exposed to unprotected heights, hazardous moving mechanical parts, or operate a motor vehicle. She can have occasional exposure to humidity, wetness, dust , odors, fumes, pulmonary irritants, extreme cold, and extreme heat. The claimant is able to understand, remember, and carry out simple instructions with only occasional changes to essential job functions; and is able to make simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public; and is able to work in an environment where productivity is judged at the end of the day rather than the middle of the day.

(R. 20.)

ALJ Alvarado began his RFC analysis by laying out the prescribed two-step process. First, he was required to determine whether Williams had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that would reasonably be expected to produce [Williams's] pain or other symptoms." (R. 20.) Second, the ALJ was required to "evaluate the intensity, persistence, and limiting effects of [Williams's] symptoms to determine the extent to which they limit [her] functional limitations." (R. 25.) This evaluation required him to look to objective medical evidence, or to the entire case record, where objective medical evidence does not substantiate Williams's statements about "the intensity, persistence, and limiting effects of claimant's symptoms." (R. 20.)

ALJ Alvarado concluded that Williams's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record." (R. 21.)

### Step 5

At step five, ALJ Alvarado explained that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 24.) The ALJ relied on the testimony of a vocational expert, who testified that Williams would still be able to perform the following representative occupations: Document Preparer (Dictionary of Occupational Titles ("DOT")) 249.587-018; Charge Account Clerk, (DOT) 205.367-014, and Table Worker, (DOT) 739.687-182. (R. 25.) All three occupations are classified as sedentary and unskilled, and there are between 3,000 and 47,000 positions in these three occupations in the United States. (R. 25.)

Accordingly, the ALJ concluded that Williams was not disabled at any time during the relevant period. (R. 25.)

### III. DISCUSSION

#### A. The ALJ's Step Three Evaluation

The ALJ found that Williams does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 17–19.) Williams asserts that the ALJ erred at step three because: (1) the ALJ improperly evaluated the medical evidence resulting in findings that are not supported by substantial evidence; and (2) the ALJ failed to meaningfully consider the effects of her obesity on her other impairments and her general ability to work. (Pl. Br. 16-28.)

Step three, it should be remembered, is a screening process that permits an award of benefits without further analysis; a negative finding at step three

simply means that the remaining steps must be performed and the applicant's capacity for work evaluated. At step three, the Third Circuit "requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d. Cir. 2000). However, the ALJ is "not require[d] to use particular language or adhere to a particular format in conducting his analysis." *Holley v. Colvin*, 975 F. Supp. 2d 467, 476-77 (D.N.J. 2013) (internal citations omitted), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). Rather, the "ALJ satisfies this standard by 'clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing.'" *Id.* at 120 (citing *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

### 1. Listing 1.02 (Major Dysfunction of a Joint)

Here, the ALJ found that the record does not document "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s)." (R. 18.) The ALJ also stated that the "record does not document involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively; nor involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." (R. 18.)

It is true that the ALJ's step three findings were somewhat conclusory in relation to Listing 1.02, but substantial evidence supports the ALJ's determination. Assessing the medical evidence, albeit in connection with Williams's residual functional capacity,[4] the ALJ acknowledges that Williams

---

[4] The Third Circuit has held that an ALJ's step-three determination is supported by substantial evidence where the medical evidence informing that determination is discussed with respect to the claimant's residual functional capacity. *Cop v. Comm'r of*

9

underwent surgery for torn cartilage in her right knee (R. 22, 380), along with suffering from a "complex tear of medial meniscus, moderate join effusion, and popliteal cyst" in the same knee. (R. 22, B7F at 18.) With respect to her left knee, Williams exhibited a "complex tear of lateral meniscus, large joint effusion, and ovoid lesion consistent with enchondroma." (R. 22, 432.)

On the other hand, the ALJ found that by April 2017, Williams exhibited both (1) a "normal range of motion in her bilateral lower extremities without joint crepitus or instability" and suffered from "no tenderness to palpation in joint or limb." (R. 22, 376.) By August 2017, while Williams "presented with moderate tenderness to palpation of the right knee," she exhibited a "normal range of motion with normal strength and stability." (R. 22, 392.) And in an April 18, 2019 examination, the treatment notes indicated that Williams exhibited "normal gait, normal range of motion in upper and lower extremities, and the ability to stand without difficulty." (R. 24. citing 508–509.)

Accordingly, the record supports the ALJ's finding that Williams did not meet the requirements of Listing 1.02.

### 2. Listing 1.04 (Disorders of the Spine)

Here, the ALJ found that although Williams suffers from spinal problems, "the record does not document nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, nor lumbar spinal stenosis resulting in pseudoclaudication." (R. 18.) Williams argues that the ALJ erred because "[i]t is clear that [Williams's] herniated nuclear pulposus caused severe stenosis with acute left L5 radiculopathy," and that although "pseudoclaudication" is not described in the medical evidence, Williams suffered from that condition. (Pl. Br. 19.) In support of that assertion, Williams only cites medical evidence dating from April 4, 2013 through March 18, 2014. These reports, however, were prepared before the disability onset date of June

---

*Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007). The same evidence need not necessarily be repeated, as long as it is clear that the ALJ considered it appropriately.

10

16, 2015, and the date of her February 15, 2017 application.[5] Consequently, Williams has failed to demonstrate that her impairment meets "all of the specified medical criteria" of Listing 1.04. *See Barnhart*, 364 F.3d at 504 (internal quotation marks omitted).

Likewise, there is substantial evidence to support the ALJ's finding that Williams did not meet Listing 1.04's requirements. The ALJ acknowledges that following Williams's motor vehicle accident on April 3, 2013, she suffered from "tenderness and restricted range of motion in her cervical and lumbar spine," which persisted though 2015. (R. 21, 458–505.) However, by 2017, Williams presented with "normal gait and was able to stand without difficulty." (R. 21, 380–381.) Further, Dr. Alexander Hoffman's August 10, 2017 medical report indicates that Williams "walked without a cane and had no difficulty getting on and off the examining table." (R. 21, 380-381.)

Consequently, substantial evidence supports the ALJ's finding.

### 3. Discussion of Obesity

With respect to obesity, the ALJ found that "even when obesity is considered in combination with ... [Williams's] other impairments, the claimant does not meet or equal any of the listings in Appendix 1, Subpart P, Regulations No. 4. (R. 18.) Williams asserts that the ALJ "failed to properly assess [her] obesity as required by [Social Security Ruling "SSR"] 02-1p." (Pl. Br. 19.) As an initial matter, SSR 19-2p, and not SSR 02-1p, applies to Williams's appeal.[6]

---

[5]    The relevant period for an SSI claim begins with the application date and runs through the date of the ALJ's decision.  *See* 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).

[6]    SSR 19-2p applies to all Social Security applications filed on or after May 20, 2019, and as applicable to Williams's appeal, all claims pending before the agency on or after that date. SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019). As Williams's application was still pending as of May 15, 2019, SSR 19-2p applies to this appeal.

11

Pursuant to SSR 19-2p, while obesity is no longer a separate listing, it can be a medically determinable impairment ("MDI") when it is established by objective medical evidence from an acceptable medical source. SSR 19-2p. Obesity can also be classified as a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." *Id.* Under SSR 19-2p, the ALJ "will not make general assumption about the severity or functional effects of obesity combined with another impairment(s)." *Id.* However, the ruling also notes that "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment" and that the ALJ will "evaluate each case based on the information in the case record." *Id.*

At step two, the ALJ found that Williams's obesity was a severe impairment. (R. 17.) Then at step three, pursuant to SSR 19-2p, the ALJ found that "even when obesity is considered in combination with the claimant's other impairments, the claimant does not meet or equal any of the listings[.]" (R. 18.) The ALJ's step-three discussion of obesity fails to sufficiently address whether Williams's obesity compounds her other impairments.

The Third Circuit has held that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, while the ALJ found that the claimant's obesity was a severe impairment, the Third Circuit noted that the ALJ "failed to consider its impact, in combination with her other impairments, at step three, as required." *Id.* at 503.[7] Therefore, the Court held that "absent analysis of the cumulative impact of [the

---

7   The ALJ relied on SSR 00-3p, which provides that a claimant's obesity should be considered on an individualized basis, with a focus "on the combined effect of obesity and other sever impairments afflicting the claimant." *Diaz*, 577 F.3d at 503 (quoting SSR 00-3p).

12

claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ's decision. *Id.* at 504.

Here, as in *Diaz*, the ALJ committed error due to the ALJ's failure to explicitly discuss Williams's obesity—either alone or in combination with other impairments. I conclude, however, that the ALJ's error was harmless and does not necessitate remand. Although *Diaz* instructs the ALJ to meaningfully consider the effects of a claimant's obesity, it does not alleviate Williams from meeting "her burden of demonstrating that the ALJ's failure to discuss obesity was a harmful error." *Slader v. Comm'r of Soc. Sec.*, No. CV 19-10198 (ES), 2021 WL 141335, at *7 n.9 (D.N.J. Jan. 15, 2021) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

The ALJ did carefully consider Williams's actual physical limitations, as evidenced by the subsequent steps of the analysis. Williams fails to make any argument concerning how her obesity would have changed the outcome of ALJ Alvarado's analysis at the screening stage of step three. Williams's failure to "affirmatively point[ ] to specific evidence that demonstrates [s]he would succeed at step three" is fatal to her appeal. *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016)

Therefore, I find that although the ALJ erred in his failure to discuss obesity alone or in combination with Williams's other impairments, this error was harmless.

### 4. Listing 3.03 (Asthma)

Here, the ALJ found that "the record does not document exacerbations or complications from asthma requiring 3 hospitalizations within a 12-month period and at least 30 days apart." Williams argues that she has "breathing treatments at her [doctor's] office and an albuterol pump," and that she has gone for a treatment "[i]n the last six months." (Pl. Br. 20.)

"For a claimant to show [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 F.3d at

13

504 (citation omitted). Williams's failure to demonstrate that she has suffered from "exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart" is fatal to her appeal. Accordingly, the ALJ did not err in finding that Williams did not meet the requirements of Listing 3.03.

### 5. Mental Impairments

ALJ Alvarado found that Williams did "not meet or medically equal the criteria of listings 12.04 and 12.15" after considering whether "paragraph B" was satisfied. (R. at 18.) On appeal, Williams does not dispute the ALJ's finding, but instead argues that her impairments meet the "paragraph C" criteria. (Pl. Br. 20–22.) Williams also argues that the ALJ erred in failing to discuss her impairments under Listing 12.08 (Personality and Impulse-Control Disorders). (Pl. Br. 23.)

Here, the ALJ analyzed Williams's mental impairments in the context of listings 12.04 (Depressive, Bipolar, and Related Disorders) and 12.15 (Trauma and Stressor-Related Disorders). Appendix 1 contains three lists of criteria, known as Paragraphs A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. The claimant must either (1) satisfy paragraphs A *and* B; or (2) satisfy paragraphs A *and* C.

ALJ Alvarado omitted any discussion of paragraph A and focused solely on whether paragraph B was satisfied, a finding supported by substantial evidence. Even assuming that Williams satisfied all the required paragraph A criteria, I will sustain the ALJ's original finding because Williams has failed to establish the presence of the requisite paragraph C criteria.

Paragraph C requires that the asserted mental disorder be "serious and persistent" with "a medically documented history of the existence of the disorder over a period of at least 2 years" and evidence of both: (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s)"; and (2) "[m]arginal adjustment," defined as "the minimal capacity to adapt to changes in [the claimant's] environment or to demands

14

that are not already part of [her] daily life." 20 C.F.R. Pt. 404, Subpt. P, App.1 , § 12.04(C); *see also* § 12.15 (C).

Williams offers no medical evidence in support of her assertion that she satisfies paragraph C. Moreover, there is substantial evidence to support a finding that paragraph C was not satisfied. Dr. Paul Fulford's September 10, 2017 report states that while Williams "was diagnosed with adjustment disorder with depressed features," she exhibited "good mental control and concentration" and that her "[m]otivation and level of effort appeared good." (R. 23, 385–386.) Further, Dr. Locke indicated that Williams "has no limitations in social interactions and adaptation and moderate limitations in understanding and memory and sustaining concentration and persistence." (R. 23, 1-3.)

Similarly, I also find that Williams has not demonstrated that she satisfies the criteria for Listing 12.08, and substantial evidence supports such a finding. Listing 12.08, which addresses personality and impulse-control disorders, requires that a claimant's impairments satisfy the criteria of both paragraphs A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08. As an initial matter, paragraphs B of Listing 12.04 and 12.15 are identical to paragraph B in Listing 12.08. *Compare id.* at §§ 12.04 and 12.15 *with id.* at § 12.08. Therefore, to the extent Williams accepts the ALJ's analysis of the criteria of paragraph B in Listings 12.04 and 12.15, that same analysis would apply to Listing 12.08.[8]

Moreover, with respect to paragraph B, Williams does not explicitly state whether she exhibits one extreme limitation or two marked limitations, nor generally set forth a coherent argument of how she satisfies the requisite

---

[8]   *See id.*; *cf. Dercole v. Saul*, No. 2:18-CV-12887, 2021 WL 1399861, at *11 (D.N.J. Apr. 14, 2021) ("Paragraph B of Listings 12.04 and 12.06 are identical to Paragraph B in Listing 12.08."); *Thomas v. Comm'r of Soc. Sec.*, No. 2:14-0627, 2015 WL 5921515, at *6–7 (D.N.J. Oct. 9, 2015) (noting that the criteria of paragraphs B and C of Listings 12.03 and 12.04 are identical and that "[t]he ALJ's finding that the criteria of Listing 12.04 were not satisfied would necessitate a similar finding as to Listing 12.03").

criteria. Therefore, any error made by the ALJ in failing to address the criteria of Listing 12.08, in addition to those of Listing 12.04 and 12.15, was harmless.

### B. The ALJ's RFC Determination

Williams also argues that ALJ Alvarado failed to properly assess Williams's RFC because the ALJ's "assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." (Pl. Br. 29.)

A plaintiff's RFC sets forth the most that a plaintiff can do despite her limitations. 20 C.F.R. § 416.945(a). When making an RFC determination, the ALJ is required to consider all evidence. *Burnett*, 220 F.3d at 121. The ALJ need not, however, rehash or discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

ALJ Alvarado determined that Williams had the RFC to perform sedentary work with certain accommodations. Contrary to Williams's assertions, the ALJ's RFC assessment references the record evidence in detail, citing disability and function reports, Williams's testimony, treatment records, and numerous medical opinions. (R. 20–23.) After considering this evidence, however, the ALJ concluded that even though Williams's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements "concerning the intensity, persistence and limiting effects [were] not entirely consistent with the medical evidence" and other record evidence. (R. 21.)

The ALJ noted that in Williams's disability report, she claimed that she suffered from "neck pain, back pain, knee problems, a right ankle problem, and a sleep disorder." (R. 20, 274.) Additionally, the ALJ cited arguably plaintiff-favorable medical evidence, such as the 2013 and 2014 medical reports documenting Williams's knee, ankle, and back impairments following her April 3, 2013 automobile accident. (See R. 20–21, 416–418.) Finally, the ALJ makes

16

numerous references to Williams's own testimony about her impairments, subjective pain, and physical and mental capabilities due to her alleged disability. (R. 21.)

On the other hand, the ALJ also cited contrary medical evidence in the record. For example, the ALJ cited medical records that indicated that Williams "strength, sensation and reflexes were intact," as well as exhibiting "normal gait and [being] able to stand without difficulty." (R. 21, 380–381.) Further, ALJ Alvarado stated that medical reports indicated that by April 2017, Williams "had a normal range of motion in her bilateral lower extremities without joint crepitus or instability" (R. 22, 376), by August 10, 2017, Williams could walk "without a cane and had no difficulty getting on and off the examining table" (R.21, 380–381), and by 2018, Williams had normal gait and "strength … in her bilateral upper and lower extremities." (R. 21, 508–509.)

In addition to the objective medical opinion, the ALJ considered medical opinions and explained the weight he accorded to each. (R. 23–24); *see Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121). The ALJ's analysis was deliberative, balanced, and well-reasoned.

For example, the ALJ gave no weight to Dr. Simpkin's finding that the medical evidence "was insufficient to establish a severe physical impairment" because: (1) Dr. Simpkins did not "have the opportunity to examine the claimant or review the evidence received after the file was complete"; and (2) the evidence established that Williams indeed suffered from severe physical impairments. (R. 23, 93–99.) Moreover, the ALJ adequately stated his reasons for giving some, but only partial weight, to Dr. Sobelman's opinion. That report found that Williams "can perform light work with postural and environmental limitations." (R. 23, 101–115.) Dr. Kahf's opinion was "not given great weight" because it was not fully supported by the treatment notes and was rendered under the standards of a different program. (R. 24, 506–513, 541–544.)

17

ALJ Alvarado concluded that his RFC assessment was "supported by the objective medical evidence, opinion evidence, and hearing testimony." (R. 24.) I agree and find that his analysis was supported by substantial evidence. The Court cannot reweigh evidence and declines the invitation by Williams to do so. *Thomas v. Comm'r of Soc. Sec.*, No. CV 19-13990 (ES), 2021 WL 870745, at *10 (D.N.J. Mar. 8, 2021)

Finally, the Court affirms the ALJ's finding that that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 24.) Those jobs, the vocational expert testified and the ALJ found, are: Document Preparer (DOT) 249.587-018; Charge Account Clerk, (DOT) 205.367-014, and Table Worker, (DOT) 739.687-182. (R. 25.) According to the DOT, there are between 3,000 and 47,000 positions in these three occupations in the United States. (R. 25.)

Williams argues that the ALJ failed to properly analyze whether this is a significant number of jobs and had the ALJ performed "the proper analysis," he would have found that "these jobs did not result in a significant number of jobs in the national economy." (Pl. Br. 32.) For example, Williams argues that the job of document preparer which has 47,000 jobs in the national economy, would only "leave 940 jobs in New Jersey" which is not a significant number. (Pl. Br. 32-33.)

Even assuming, for purposes of her hypothetical, that these jobs are evenly distributed among the fifty states, Williams's argument is unavailing. Notably, the Third Circuit has found that as few as 200 and 569 jobs nationwide to be "significant," which is far fewer than the jobs available for Williams's representative occupations. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987); *Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) (holding, based on *Craig, supra,* that "the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor [in Pennsylvania] was evidence of other work in significant numbers in the national economy"); *see also Benton v. Comm'r of Soc. Sec.*, No. 1:18-CV-09478-NLH, 2019 WL

2285490, at *7 (D.N.J. May 29, 2019) (holding that 1,940 jobs available nationally was significant).

Therefore, the ALJ's determination that Williams's RFC enabled him to work in the above occupations is supported by substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed.

A separate order will issue.

Dated: January 31, 2022

/s/ Kevin McNulty

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**Hon. Kevin McNulty
United States District Judge**

19